THE STATE EX REL. HALFWAY RIVER SCHOOL DISTRICT *vs.* WALTER S. BRADLEY AND ANOTHER.

Fairfield County, March T., 1886.   PARK, C. J., CARPENTER, LOOMIS, GRANGER and BEARDSLEY, Js.

In the absence of record evidence of the establishment of a school district, its legal character as such may be proved by reputation.

A school district originally legally organized in the town of *N*, claimed that a portion of the adjoining town of *M* had been annexed to and become a legal part of it. There was no record evidence of the fact. Held that the legal annexation of the part in question might be shown by such conduct of the district and of others with regard to it for a period of forty years as raised a presumption of such annexation.

And held that the district claiming the territory in question must show a definite line bounding it.

Sundry facts considered which were held sufficient to raise a presumption of such annexation.

And sundry facts considered which were held sufficient to determine the existence and location of such a boundary line.

[Argued March 18th—decided April 24th, 1886.]

APPLICATION for a mandamus to compel the defendants, assessors of the town of Monroe, to make a separate valuation of the real estate lying within a part of the town claimed to belong to the plaintiff school district, which district lay principally in the adjoining town of Newtown, but claimed to include a portion of the town of Monroe. The application was made to the Superior Court in Fairfield County and, upon an answer filed by the defendants, was heard before *Sanford, J.* The plaintiff's evidence being in, the defendants moved for a non-suit, which was granted by the court; and on the denial of a motion to set it aside, the plaintiff appealed to this court. The case is sufficiently stated in the opinion.

*D. Davenport* and *W. H. O'Hara*, for the appellant.

*W. H. Williams*, for the appellees.

PARK, C. J. It appears in this case that the plaintiff school district, being indebted, levied a tax upon the property of the district to pay the indebtedness. The district is mainly in the town of Newtown, but claims as a part of its territory certain land in the adjoining town of Monroe. This land is assessed with other property of that town which lies without the limits of the district, and there has been no separate valuation of the property which is claimed to lie within the plaintiff district in that town.

This proceeding is brought to compel the assessors of the town of Monroe to make a separate valuation of the real estate of the town which is claimed to be within the district, in order that it may be taxed. The defendants claim that no part of the territory of the town lies within the limits of the plaintiff district, and they therefore refuse to make the valuation.

Hence the sole question in the case is,—does the plaintiff district include a definite portion of the town of Monroe?

The district was incorporated in the year 1803, and its original territory was wholly within the town of Newtown.

On the trial of the cause in the court below no record evidence was offered by the plaintiff showing that a portion of the territory of the town of Monroe had been annexed to the district, but the plaintiff relied upon prescription to prove the fact—upon a long continued exercise of authority by the district over a definite portion of the territory of the town as a part of the district; which acts had been acquiesced in by the school societies of Monroe and Newtown, which had jurisdiction over the formation and alteration of districts down to the year 1856, and by the towns since that time; and likewise upon confirming acts of the legislature, and acts recognizing the district as embracing a definite part of the territory of the town of Monroe.

Some of the acts of authority, exercised by the district over the territory in dispute, and tending to show that the territory had at some time been annexed to and incorporated in the district, are the following:—More than forty years ago the district built, and ever since has kept up, a district school house, and has maintained a district school therein, at which school the children of that part of the town of Monroe claimed to belong to the district have attended according to law, and to the satisfaction of the school committees and of the school societies of the towns of Newtown and Monroe. During all that time the district has held district meetings, in which the inhabitants of Monroe living on the disputed territory have taken part; they voted and some of them at times presided therein. The district has levied and collected taxes upon property in both towns for district purposes, without objection from the property owners who lived within the disputed territory. The district has drawn money from both towns for district purposes without objection. The district applied to the selectmen of both towns to define the southeastern boundary line of the district, and the line was defined by a selectman of each town, the two acting together, and each acting for the other selectmen of his town. The inhabitants of both towns living within the district have at various times held the offices of district committee, treasurer, and collector, and have performed the

duties thereof under oath. Children belonging to the town of Monroe, living within the disputed territory, have been enumerated by the district committees from time to time as belonging to the district; and returns of such enumeration have been made to the Newtown school visitors under oath, as by law required in case of a joint district. The town officers of the town of Monroe have, from time to time, paid school fund money to the district as a joint district. The selectmen of the town of Newtown have demanded money of the town of Monroe, and received it on account of this district as a joint district. The selectmen of Monroe in the year 1863 established the northern boundary of the Eastern School District as the southern boundary of the plaintiff district.

These acts, and many others of a like character, running over a period of nearly forty years, were introduced in evidence, tending to show that the plaintiff district is a joint district, embracing a part of the territory of the town of Monroe ; and we think they establish a strong *primâ facie* case to that effect, if the evidence was properly received for the purpose.

The defendants insist that record evidence is the only proper evidence for such purpose ; but we think the authorities establish a different rule.

In the case of *Bow* v. *Allenstown,* 34 N. Hamp., 351, the court say :—" It has been settled by the decisions of the Superior Court that in a case where no charter or act of incorporation of a town can be found, it may be proved to be a town by reputation, or it may be shown to have claimed and exercised the powers of a town, with the knowledge and assent of the legislature and without objection or interruption, for so long a period as to furnish evidence of a prescriptive right." The principle of this case applies equally well to a school district.

In the case of *Dillingham* v. *Snow,* 5 Mass., 547, the court held that where no act of incorporation of a parish could be found, the court below very properly admitted proof of its incorporation by reputation.

In the case of *Bassett* v. *Porter*, 4 Cush., 487, the court say :—"It was by no means necessary to produce a record of the lay-out of the district or any direct and positive evidence of such lay-out; the fact that such a district had existed, had been known and recognized, and had acted as such in all respects, would be ample evidence from which a jury might well infer or presume that it had a legal origin, though no direct or positive evidence of its origin could be produced. In truth, the simple fact of the existence, in such a town as Taunton, of a school district, known and acting as such for many years, would lead the mind almost unavoidably and irresistibly to the conclusion that it must have had a legal origin. The longer its existence could be shown the stronger would be the presumption that it was originally duly established, and that the direct evidence of its establishment had been lost by time or accident. That it would be perfectly competent and proper for the jury to make such presumption there can be no doubt. Such presumption would be warranted by one of the most familiar and well-settled principles of the law of evidence. It is a matter of every day's practice that a long continued possession furnishes ground of presumption that such possession was rightfully commenced, and thus a legal title is established to land, or to an easement upon land, though no grant or deed is shown, and no positive evidence of such grant or deed is introduced."

In the case of *Barnes* v. *Barnes*, 6 Verm., 388, the court, in considering a similar question to the one raised in this case, use the following language :—"No records of the town were produced to show either the existence or organization of the district; and if no other proof is admissible for that purpose the defendant has failed in making out his title. The court however consider that the existence of a school or highway district may be proved by reputation. If the records of the town have been examined, and the organization of such districts does not appear of record, their existence in point of fact may be proved. All that is necessary in such a case is to show that there is a district long known

and recognized as such. If there are persons claiming to act as inhabitants of a school district within certain boundaries, and who have for a long time acted as a school district, whether those boundaries are designated by any particular lines or by the farms of the individuals belonging thereto, they may be regarded as belonging to a district regularly organized. Without this kind of proof there would be a failure of evidence as to the existence or organization of most of the highway and school districts in this state."

In the case of *Sherwin* v. *Bugbee*, 16 Verm., 439, the court say:—" It is now well settled in this state, notwithstanding the decisions reported to the contrary, that the mere fact of a school district maintaining its existence and operation for a great number of years, say fifteen, is sufficient evidence of its regular organization."

We deem these authorities sufficient to show that the evidence in question was proper to be received, as tending to prove that the plaintiff district was duly organized as a joint district, having a part of its territory in the town of Monroe.

The only remaining question is, does the territory embraced by the district in the town of Monroe have definite limits ?

We fully agree with the counsel for the defendants, that the territory must have such limits, or else the plaintiff will fail, for this proceeding is adapted only to the enforcement of legal rights that are well defined.

The controversy regarding this question is confined to the southern boundary of the plaintiff district. It appears that the Eastern School District No. 2, of the town of Monroe, lies southerly of the plaintiff district, the northerly line of which, it is conceded, is well defined. We think the southerly line of the plaintiff district coincides with this line, for the following reasons : In the first place, it appears from the evidence in the case that, unless this be true, there is territory north of this line and between it and the southerly line of the plaintiff district which is included in no district of the town of Monroe ; an improbable state of

things, in these days when all property is intended to be burdened with the expense of maintaining district schools. In the second place, the territory which lies north of this line and between it and the town of Newtown, which lies still further north, contains seven families, residing in seven different farm houses, four of whom are embraced by the plaintiff district, and unless the other three are thus included, it follows that they belong to no district of the town of Monroe; which again is a conclusion too unreasonable to be accepted. In the third place, all the evidence in the case tends to show that the northerly line of the Eastern School District coincides with the southerly line of the plaintiff district. There is no suggestion of any other line, which could hardly be the case if there was another line. And lastly, upon application being duly made, the first selectman of the town of Newtown, and the first selectman of the town of Monroe, acting together, and each for the other selectmen of his respective town, being thereto authorized, established the northerly line of the Eastern School District as the southerly line of the plaintiff district.

We think, therefore, that the evidence offered by the plaintiff district clearly established a *primâ facie* case in its favor, and that the court below erred in deciding differently.

There is error in the judgment appealed from, and it is reversed.

In this opinion the other judges concurred.